J-S05033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO M.A.H., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.R.M., MOTHER | : : : | |
| | : | No. 1150 WDA 2022 |

Appeal from the Decree Entered September 7, 2022
In the Court of Common Pleas of Venango County Orphans' Court at
No(s):  2022-00102

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: MARCH 20, 2023**

J.R.M. ("Mother") appeals from the order terminating her parental rights to M.A.H., born April 2015, ("Child"). Mother challenges the court's conclusion that termination was proper under 23 Pa.C.S.A. §§ 2511(a) and (b). We affirm.

Child came into care in December 2018 and was adjudicated dependent in March 2019. At that time Mother faced criminal charges, including child endangerment charges, where Child was not the victim. In July 2022, CYS filed a petition for involuntary termination of Mother's parental rights.[1] The court held a hearing, at which the court heard testimony from Mother's parole

_____

[1] Child's father died in April 2019.

agent Deborah Kappeler; Child; Child's foster parent J.N.C.; Child's therapist Michael Veronesi; Child's case worker Phyllis Alden; and Mother.[2]

Kappeler testified that while on parole Mother tested positive for methamphetamine. N.T., Aug. 23, 2022, at 13. Mother then attended drug and alcohol treatment at Alpine Spring inpatient treatment facility from September 2, 2021, to October 1, 2021. *Id.* She completed the program and followed the aftercare, which included outpatient treatment, which she also completed. *Id.* Mother had no positive screens for methamphetamine in the past six months. Kappeler testified that Mother tested positive for THC in January and June 2022. N.T., Aug. 23, 2022, at 12. She stated Mother had previously had a medical marijuana card, but it expired, and Mother had not provided her with a copy of a new card. *Id.* Kappeler further testified that the week prior to the hearing, she told Mother to come see her and that she would be doing a drug screen, but Mother did not come to the appointment. *Id.* at 21. Kappeler testified Mother is attending counseling but did not know if she was compliant with the counseling requirement of her parole. *Id.* at 14-15. She stated Mother has dated two men who were addicted to

---

[2] Mother participated at the hearing by telephone. She had requested a continuance the day prior to the hearing, stating she needed more time to prepare. Motion to Continue, filed Aug. 22, 2022. The court denied the continuance request. Order, dated Aug. 22, 2022. On the day of the hearing, Mother stated she had all the symptoms of Monkeypox. N.T., Aug. 23, 2022, at 3-4. She did not have confirmation from a medical provider of this diagnoses. *Id.* at 3-5. The court denied the continuance request. *Id.* at 5.

methamphetamine. *Id.* at 16. She said Mother's parole supervision will end on April 25, 2030. *Id.*

Foster parent testified that at the time of the hearing Child had resided with her and her husband for three years and three months. *Id.* at 49. She stated that when Child first arrived, he "seemed really angry," stating he was "defiant," "would just explode," and "would scratch his face, ram his head into different things like windows or cabinets." *Id.* at 51. She testified that now he is "kind and smart and goofy." *Id.* at 52. Foster parent stated Child liked to make people laugh and is "very obedient and will do pretty much whatever you say without a word about it." *Id.* She stated he has "changed in his behaviors and is stable." *Id.* She testified that at school Child has "learning support, emotional support, and speech and an IEP, but he is in a regular classroom . . . part of the day." *Id.* at 54. Foster parent stated Child is seeing a psychiatrist, is on medication, and is "doing very well with that." *Id.* She testified Child saw Mother five times in the past year, and the visits were facilitated by Child's grandmother. *Id.* at 55.[3] She stated Mother has called five times in the past eight months. *Id.* at 60. Foster parent testified she and her husband would be an adoptive resource if Mother's parental rights were terminated. *Id.* at 57.

---

[3] Foster parent also testified that Child sees his brother when he visits his grandmother and through visits coordinated with the brother's foster family. N.T., Aug. 23, 2022, at 61-62.

Veronesi testified that he is a therapist who works with children in the foster care system who have behavioral concerns and has been working with Child on a weekly basis since April 2021. *Id.* at 63-65. Veronesi stated that when Child first started with therapy, he "appeared to be a very angry child," noting there was a lot of defiance towards the foster family and at school, there were behavioral concerns at school, and there was self-harm and threats to himself and others. *Id.* at 65. He stated that today Child is a "different child," he is "very happy, he's social, just a fun kid to be around." *Id.* Veronesi testified that foster parents are engaged in the treatment, and they call to request additional help or ask for techniques to assist with Child's behaviors, and stated he believed Child was in a "very loving, safe environment." *Id.* at 66.

Alden testified that Child came into care in December 2018 and was adjudicated dependent in March 2019. *Id.* at 78. At that time Mother faced criminal charges, including endangering the welfare of a child, where the victim was a different child. *Id.* at 77. Alden testified that Mother pleaded guilty to the endangerment charge, after which she was incarcerated and released on parole in June 2021. *Id.* at 81-82. Alden testified that after Mother tested positive for methamphetamine in the summer of 2021, she engaged in the inpatient program at Alpine Springs. *Id.* at 83. Alden stated that in November 2021, Alden put a drug patch on Mother to determine whether she was using narcotics. *Id.* She used the patch because Mother had fallen off the

radar, was not contacting Alden, and appeared to be high at a court hearing. *Id.* The patch was positive for methamphetamine. *Id.* at 84.

Alden testified that after Mother's release from prison she had supervised visits with Child. *Id.* She stated that Mother did not attend all of the offered visits, noting that around December 2021, Mother went five or six weeks without visiting with Child. *Id.* Alden said that in November 2021, CYS asked the court to cease reasonable efforts, noting that Mother had not shown she would be able to properly care for and protect Child. *Id.* at 85-86. Alden did not believe there would be any "merit in trying to continue to reunify [Child] with [M]other" and did not think he would be safe with Mother due to concerns with Mother's use of methamphetamine, that she had known drug addicts "in and out of her house," and had presented as unstable throughout the case. *Id.* at 86-87. Alden testified that "[Child] shows [Mother] affection," and "will say that he miss[es] his mom" but it was "very different from the affection [Alden] see[s] with [Child] and [foster parents]." *Id.* at 106. She stated the bond between Child and foster parents is "natural," he will "look at them and just smile," and he "runs up to them for comfort or to show them something fun." *Id.*

Mother testified that she successfully completed inpatient and outpatient drug and alcohol treatment and currently was in mental health treatment and on medication. *Id.* at 110-11. She testified she had minimal contact with Child during the last year because "CYS required [her] to be supervised with [Child]," and claims she was wrongfully convicted and the conviction was

"based upon false allegations." *Id.* at 114. She stated she only had seven or eight phone calls with Child because she is monitored and cannot hear Child during the calls. *Id.* Mother stated she had seven in-person visits with Child during the last year. *Id.* at 116. They played basketball, Child played with the keyboard, and they watched television and talked during the visits. *Id.* at 117-18. Mother testified that terminating her parental rights would not be in Child's best interest because it is not in Child's "best interest to be separated from myself and his brother any longer than he already had been. He's already lost so much love from us. We have a really close happy family when we're together, and I invite anyone to come and be a witness. And I love him very much. I miss him." *Id.* at 119.

The trial court found CYS established grounds for termination under 23 Pa.C.S.A. §§ 2511(a)(1) and (2) and 2511(b). Mother timely appealed.

Mother raises the following issues:

> Issue 1: Whether the trial court erred as a matter of law or abused its discretion in granting CYFS's petition to involuntarily terminate [Mother's] parental rights in the absence of clear and convincing evidence that [C]hild was removed from the care of the Mother by the court for at least six months and the conditions which led to [C]hild's removal continue to exist and that the Mother cannot or will not remedy those conditions within a reasonable period of time and the services and assistance reasonably available to Mother are not likely to remedy the conditions which led to the removal of [C]hild within a reasonable period of time?

> Issue 2: Whether the trial court erred as a matter of law or abused its discretion in determining that [Mother's] parental rights should be terminated as being in the best interest of [C]hild was against the weight of the evidence presented at trial?

- 6 -

Mother's Br. at 8 (unnecessary capitalization omitted).

In her first issue, Mother argues the trial court erred in terminating her parental rights under Section 2511(a). She points out she had approximately seven supervised visits with Child in 2022, phoned Child five times, and, throughout the case, she has "expressed her love of her child and her desire to have the child returned to her care and [to] continue to parent [him]." Mother's Br. at 15-16. Mother claims she received treatment for her abuse of illegal substances, completing both inpatient and outpatient services. She claims that the issues that led to termination can be remedied, as she completed substance abuse treatment and was willing to continue to receive mental health treatment. She noted the Pennsylvania Board of Probation and Parole had a plan in place for her to follow, where she had to attend drug and mental health treatment, sign release forms, attend community support groups, achieve negative results on drugs screens, and cannot consume or possess alcohol. Mother claims the issues can be remedied and she will continue to work on the issues.

In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (quoting **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest

unreasonableness, partiality, prejudice, bias, or ill-will." **In re Adoption of S.P.**, 47 A.3d at 826.

A party seeking to terminate parental rights has "the burden of establishing grounds for termination 'by clear and convincing evidence.'" **In re Adoption of K.C.**, 199 A.3d at 473 (citation omitted). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." **Id.** (quoting **In re Z.S.W.**, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. **In re L.M.**, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

**Id.** (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of section 2511(a). **In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

The court terminated Mother's parental rights pursuant to Section 2511(a)(1) and (2). As only one basis for termination under Section 2511(a)

- 8 -

is necessary, we will focus our attention on the court's termination of Mother's parental rights pursuant to Section 2511(a)(1). That subsection states:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). To terminate under subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***In re Z.S.W.***, 946 A.2d at 730.

Here the trial court concluded that for a period of more than six months Mother evidenced a settled purpose of relinquishing parental claim or refused or failed to perform parental duties:

> Mother has had more than ample time to remediate the conditions which caused the child to be removed from her home. The child has been in placement since December 27, 2018, a total of 44 months, and Mother has not resolved the issues that led to the dependency.
>
> It is not a question of Mother's willingness or ability to remedy the conditions that led to [C]hild's placement if the conditions continue to exist. . . .
>
> For a period of at least six (6) months immediately preceding the filing of the Petition, Mother has either evidenced a settled purpose of relinquishing her parental

claim to this child or has refused or failed to perform parental duties as required in 23 Pa. C.S.A. § 2511(a)(1) . . . .

Trial Court Opinion, filed Sept. 6, 2022, at 5-6 (citations to cases omitted).

The record supports the court's factual findings and it did not abuse its discretion in concluding termination was proper under Section 2511(a)(1). Mother has not consistently visited or had phone calls with Child, has not established a stable home environment, and although she completed drug and alcohol treatment, it is not clear that Mother remains sober. It was not an abuse of discretion to find Mother for at least six months had evidenced a settled intent to relinquish parental claim to Child or a refusal or failure to perform parental duties.

In her second issue, Mother argues the court erred in finding termination was in Child's best interest. She claims she cared for Child from birth through his placement by the CYS and her "legal issues, substance abuse issues and mental health issues were, at the time, being treated and there was a plan outlined for her by the Pennsylvania Board of Probation and Parole." Mother's Br. at 18. She pointed out her testimony wherein she stated the court should not terminate her parental rights because she "d[oesn't] think it's in [Child's] best interest to be separated from [her] and his brother any longer than he already has been. He's already lost so much love from us. We have a really close happy family when we're together, and I invite anyone to come and be a witness. And I love him very much. I miss him." *Id.* at 18 (citation omitted).

The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.* However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d at 268.

The trial court concluded Child's developmental, physical, and emotional needs and welfare would best be met by terminating Mother's parental rights:

> [T]he Agency has established by clear and convincing evidence that the developmental, physical and emotional needs and welfare of the child is best met by involuntarily terminating the parental rights of Mother. Pa. C.S.A. § 2511(b). The child arrived in foster care with behavioral issues; he was acting out, was identified as an angry young child, and engaged in self-destructive behavior, including self-harm, scratching and hitting. After living in a therapeutic foster home which provided a safe, loving and nurturing environment for the child, and undergoing

> counseling, the child has adjusted to becoming a happy, goofy kid. He has no discernable bond with Mother. He looks to his foster parents as his primary parents and to Mother as his "other mom." She rarely visits with him and rarely talks with him on the telephone.

Trial Court Opinion at 6.

The record supports the court's findings of fact and it did not abuse its discretion in finding termination of Mother's parental rights would best serve Child's developmental, physical, and emotional needs and welfare. Child is bonded with foster parents, who provide a loving environment. Child has not lived with Mother for over three years and has had only infrequent visits.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/20/2023</u>